## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KENNETH L. KELSEY, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>CITIGROUP INC., dba CITIBANK, N.A.,<br><br>        Defendant. | 2:12-cv-0754-LDG-GWF |

Defendant Citigroup Inc. has filed a motion to dismiss (#10, opposition #14, reply #16). It has merit. Defendant's motion to dismiss, brought pursuant to Rule 12(b)(6), challenges whether plaintiffs' complaint states "a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Neitzke v. Williams,

490 U.S. 319, 327 (1989).  Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party."  <u>Outdoor Media Grp., Inc. v. City of Beaumont</u>, 506 F3.d 895, 900 (9th Cir. 2007).

Plaintiffs are owners of residential property in Las Vegas, Nevada, which is secured by a mortgage that is allegedly serviced by Citigroup, Inc. ("Citi").  Plaintiffs allege that they received a letter from Citi dated January 26, 2012 (the "letter"), indicating that as a result of the Home Affordable Refinance Program (HARP) they were "pre-approved" and had "earned the opportunity to receive relief on your mortgage payments based on your on-time mortgage payments" and was being offered at "[n]o cost to you", with an "[i]nstant closing process", with "[n]o appraisal", and for a "[l]ocked interest rate".  Plaintiffs further allege that the letter instructed them to "[r]espond quickly to take advantage of the opportunity", that the refinance offer was "available to you only" for an extremely limited period of time, that they were required to "complete the enclosed response form and return it in the pre-paid UPS envelope provided prior to" a stated expiration date, that they could "[t]ake advantage now and enjoy the benefits of a no-cost offer at a great low rate", and that "[i]t's as simple as that!"  Plaintiffs, however, were denied the refinancing, and claim that Citi's representations were false, and that Citi breached the terms that had been accepted by plaintiffs.  Plaintiffs allege causes of action for violation of the Truth In Lending Act (TILA); violation of HARP, fraud and intentional and negligent misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel.

    1.    <u>TILA claim</u>

As Citi argues in its motion to dismiss, plaintiffs' claim of a violation of TILA,15 U.S.C. § 1601, et seq., fails.  Section 1639 of TILA requires only the disclosure of certain information "not less that 3 business days prior to the consummation of the transaction" extending credit.  Here, neither plaintiffs' complaint, nor other facts in the record which would justify an amendment,

2

indicate that a credit transaction was consummated, especially since the complaint alleges that the refinance offer was denied.

Plaintiffs argue that Citi violated TILA provisions regarding advertising, including those pursuant to 12 C.F.R. § 226.24 requiring advertisements for credit to "stat[e] specific credit terms, . . . state only those terms that actually are or will be arranged or offered by the creditor," and "disclosures required by this section shall be made clearly and conspicuously."  Not only does plaintiffs' argument undermine their contention that a binding contract was created by their acceptance of the alleged offer contained in the letter, but there is no private right of action to enforce the TILA's credit-advertising rules.  See Fidelity Mortgage Corp. v. Seattle Times Co., 304 F. Supp.2d 1270, 1273-74 (W.D. Wash. 2004) (TILA "specifically exempts [by omission] credit advertising from the application of civil penalties" (citing Jordan v. Montgomery Ward & Co., 442 F.2d 78, 81 (8th Cir. 1971)).  Plaintiffs' TILA claim fails as a matter of law to state a claim.

        2.       HARP claim

Plaintiffs allege that Citi violated HARP by placing conditions on plaintiffs beyond the stated HARP requirements.  As with the Home Affordable Modification Program (HAMP), HARP was created pursuant to the Emergency Economic Stabilization Act (EESA).  EESA authorized the Secretary of the Treasury, the Federal Housing Finance Agency, Fannie Mae, and Freddie Mac to create the Making Home Affordable Program in 2009, which consists of two components, HAMP and HARP.  While authority has not developed regarding whether HARP provides a private right of action, virtually every court which has considered the issue with respect to HAMP has held that no such right of action exists under that program.  Morever, the reasoning of the overwhelming majority of courts which have held that no private right of action exists under HAMP, have concluded that EESA does not expressly provide such a right of action; to the contrary, Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac.  See Marks v. Bank of America, N.A., 2010 WL 2572988 (D. Ariz. June 22, 2010).  The

1  court determines that the same analysis would apply to the other offspring of EESA.  Nor have
2  plaintiffs identified any HARP guidelines or other authority indicating that a private right of action
3  exists for HARP.  Finally, the court declines plaintiffs' invitation to exercise its discretion in
4  allowing plaintiffs to proceed with the action.  Needless to say, the issue is whether Congress, not
5  the court, intended to create a private right of action.

6        3. <u>Breach of contract claim</u>

7  Plaintiffs' breach of contract claim must fail because, as a matter of law, no binding
8  contract was formed.  Plaintiffs' claim depends on the letter constituting an offer by Citi, which
9  was accepted by plaintiffs.  However, despite the highly optimistic language used in the letter, the
10 correspondence is clearly a invitation to apply, and not an offer.  The second page of the letter
11 unambiguously states "This is not a commitment to lend."  It is also definite that other
12 requirements had to be met before an eligibility determination could be made.  The letter states that
13 "[a]fter we review your Declarations on the response form, we may determine that you no longer
14 meet the eligibility requirements," and "[a]ll loans are subject to credit and property approval," and
15 "a satisfactory title examination."  The response form to be returned by the recipients of the letter
16 indicated that, by signing it, the signatory would "specifically represent" that "the information
17 provided in this application is true and correct," and that the loan requested pursuant to the
18 Response Form" would be secured by the property.  Finally, the form reiterated that "[t]his is not a
19 commitment to lend."  Such terminology cannot be construed other than as an invitation to apply
20 for the refinance.

21 As Citi also points out, the letter lacks significant material terms of any refinancing
22 transaction.  See <u>May v. Anderson</u>, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005) (a contract
23 exists only when the parties have agreed to all material terms).  Here, the loan term and interest
24 rates provided in the letter are identified only as "an example."  The letter does not identify the
25 exact loan or payment amounts.  Plaintiffs' breach of contract claim is, therefore, not cognizable.

26

4. <u>Remaining claims</u>

In the absence of an enforceable contract, plaintiffs' claim for breach of the implied warranty of good faith and fair dealing is insufficient. <u>See</u> <u>Nelson v. Heer</u>, 163 P.3d 420, 426-27 (Nev. 2007) ("the implied covenant of good faith and fair dealing" is "impose[d] upon the parties" by contract). Nor is there a fiduciary duty simply based on the relationship between a lender and a borrower. <u>See</u> <u>Giles v. General Motors Accept. Corp.</u>, 494 F.3d 865, 882 (9th Cir. 2007). Finally, plaintiffs' claim for promissory estoppel fails to state a claim because (1) as discussed above, the letter did not amount to a commitment to lend upon the response made by plaintiffs, and (2) plaintiffs have not alleged facts supporting their detrimental reliance or damages based on any promise made in the letter. Therefore,

THE COURT HEREBY ORDERS that defendant's motion to dismiss (#10) is GRANTED.

DATED this 26 day of March, 2013.

_____
Lloyd D. George
United States District Judge